**Ronald THORPE, Plaintiff,**

v.

**ALBER'S, INC., Defendant.**

No. 3:95–cv–312.

United States District Court,
E.D. Tennessee,
Northern Division.

Feb. 9, 1996.

J. Mikel Dixon, Knoxville, TN, for Plaintiff.

Cecilia S. Petersen, Kevin M. Dorris, and Ronald G. Daves, Wimberly & Lawson, Knoxville, TN, for Defendant.

**MEMORANDUM OPINION**

JORDAN, District Judge.

I

The plaintiff filed his complaint originally in the Circuit Court for Knox County, Tennessee, stating causes of action under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101–12213 (ADA),

Tennessee law concerning defamation, and Tennessee Code Annotated § 8–50–103 [1].

In his complaint, the plaintiff alleges that he began working for the defendant on July 31, 1989, but that after loyal and faithful service, on September 9, 1993, the defendant discharged him because of his physical disability. The plaintiff is not specific about the nature of his disability, but alleges that his condition deteriorated over time, causing him to become a part-time instead of a full-time employee of the defendant.

Also in his complaint, anticipating the defense, the plaintiff says that the defendant used the pretext of an impropriety or discrepancy concerning the plaintiff's use of a company credit card to justify the termination of the plaintiff's employment. The plaintiff says that the defendant unsuccessfully relied on this pretext in defending against the plaintiff's claim for unemployment benefits before the Tennessee Department of Employment Security. It is this accusation of unauthorized use of a company credit card for gasoline purchases on which the plaintiff's claims of libel and slander are based. The plaintiff asks for compensatory damages in the amount of $1,500,000.00, and for punitive damages in a like amount.

The defendant properly removed this civil action to this court [doc. 1] [2], on the ground of the plaintiff's claim for relief under federal law, and moved for a summary judgment of dismissal of the action [doc. 2]. In support of its motion for summary judgment, the defendant by affidavit evidence shows that in 1993, it was discovered that the plaintiff had made several charges for gasoline purchases before and after his shift. An audit of the plaintiff's charges showed that he had made 24 charges before and after work and during his lunch hour. When supervisors confronted the plaintiff with this information, he at first stated that he had lent his charge card to other employees, then stated that he had no explanation for the charges, then stated that he must have been making deliveries when he made the gasoline purchases. Carolyn Cameron, the affiant, and the defendant's personnel and benefits manager, states that the plaintiff was the only driver who was found to have made charges before and after work and during his lunch hour. The defendant concluded that he had used the charge card for personal purposes, and so discharged the plaintiff from employment.

The defendant denies that any disability on the plaintiff's part influenced its decision to terminate his employment. Ms. Cameron states in one of her affidavits that it had not occurred to her that the plaintiff's claim for long-term disability benefits might affect the defendant's premium cost for such coverage, and when she checked, she was advised by the defendant's long-term disability insurance carrier that the claim would not affect the premium cost. [3]

1. The plaintiff states in his complaint that the defendant's alleged conduct violated the public policy of the State of Tennessee in favor of employment of the handicapped declared in T.C.A. § 8–50–103. This statutory provision, in § 8–50–103(a), prohibits discrimination by, *inter alia*, "any private employer," "in the hiring, firing and other terms of employment," "against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant," unless the handicap "to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved." Such discrimination is declared to be a misdemeanor.

In § 8–50–103(b), a victim of such a prohibited discriminatory practice is given the procedural rights and remedies provided to other victims of discrimination in employment by the Tennessee Human Rights Act, specifically by T.C.A. §§ 4–21–302 through 4–21–311.

In his brief filed in opposition to the defendant's motion for summary judgment [doc. 12], the plaintiff disavows any intention to "seek a separate and distinct cause of action under T.C.A. § 8–5[0]–103, et seq."

2. The court ruled, in denying the plaintiff's motion to remand, that the defendant properly removed this civil action, in a memorandum and order filed on July 10, 1995 [doc. 8].

3. In his administrative complaint filed with the Equal Employment Opportunity Commission in this case, the plaintiff alleged that the defendant discriminated against him because if he had succeeded in establishing that he suffers from a disability, "then their insurance company would have to pay me disability income up to 3 years, and that was just to (sic) much of a libility (sic) to the company." The plaintiff also alleged that the defendant discharged him from employment to prevent him from having a vested interest in the defendant's employee stock ownership program (ESOP).

In response to an argument made by the plaintiff in this case, that the defendant's stated reason for terminating his employment is pretextual because other drivers employed by the defendant purchased gasoline with company charge cards while "off the clock," the affiant Ms. Cameron states in her affidavits that at least one identified employee was authorized to use company vehicles while on weekend emergency duty; that the defendant's policy, in keeping with the Fair Labor Standards Act, prohibits employees from working without recording the time worked on time cards; that in certain instances, when the building is locked and the time clock is unavailable to them, some employees are permitted to write their working hours on their time cards [4]; that over-the-road drivers employed by the defendant do not return to the defendant's plant to clock out and in for lunch breaks; and that "[n]o other employee has ever been caught doing what [the plaintiff] did." Rejecting any assertion that the defendant discriminates against disabled persons, Ms. Cameron also states in one of her affidavits, "[The defendant] has employees performing the same tasks as plaintiff—both drivers and stock clerks—who are physically disabled and hearing impaired."

The evidence shows that the defendant hired the plaintiff as a shipping clerk. When he was hired, the plaintiff had an obvious condition which requires that one shoe have a built-up heel one and three-quarters inches higher than the other one. After the defendant transferred the plaintiff to the day shift, he continued to work as a shipping clerk, with the additional duty of serving as an emergency driver to pick up and make deliveries within the immediate Knoxville area. After he underwent surgery to correct a dislocated shoulder, the defendant accommodated the plaintiff by working him for half shifts.

As a result of the audit of the plaintiff's gasoline purchases, the defendant compiled much documentary evidence of such irregularities as multiple gasoline purchases in a single day. On one day, a charge receipt shows a purchase of gasoline after the plaintiff had left work due to sickness, and another one the next morning, before his shift began. Even the plaintiff, at his discovery deposition, admitted that the purchase while he was away from work sick "[l]ooks suspicious to me, yes." He also admitted that he was not aware of any other employees of the defendant who used their company gasoline charge cards outside their work hours, or who used their cards for their own purposes.

The plaintiff's deposition testimony shows that many of his allegations of discriminatory treatment on the basis of disability are based on his own speculations. He believed that if the defendant learned that he had sought disability insurance benefits under the Social Security Act, the defendant would discharge him from employment because of his disabilities, but this belief was based only on what co-workers told the plaintiff. He thought that it was "common sense" that if he were injured on the job, due to his existing disabilities, the defendant would incur much liability, but the defendant maintained a non-contributory disability insurance policy for the benefit of its employees at all times material to this litigation, and, the plaintiff admitted at his deposition, no one had ever told him that this insurance would become more expensive to the defendant if the plaintiff obtained benefits under it. The plaintiff also admitted that if he had pursued successfully a disability determination under the Social Security Act, any Social Security disability insurance benefits paid would have reduced the amounts payable by the group disability insurance carrier.

The plaintiff infers from Ms. Cameron's request that he seek permission from his physician to return to full-time work some sinister intention for the benefit of the disability insurance carrier, but, again, the plaintiff relies on nothing more than his own opinion concerning the motivation behind Ms. Cameron's statement. The plaintiff could not identify any statement by supervisory

---

4. For example, Ms. Cameron states in one affidavit, "It is not a violation of company policy for weekend drivers to write their time in on their cards. Because we warehouse controlled substances, the building must be locked on the weekends and the drivers cannot get to the clock to clock in or out."

personnel at the defendant's plant which linked the plaintiff's disability with the decision to terminate his employment. Concerning his cause of action for defamation under State law, the plaintiff was not more specific than to say that former co-workers still at the defendant's plant knew that "there's word going around the company that I've been fired over stealing gas."

In his affidavit filed in opposition to the defendant's motion for summary judgment[5], the plaintiff says that he purchased gasoline while off the clock because he knew that the defendant disfavored overtime work, it was difficult for him to complete all of his job duties within the time allowed, and he did not mind doing the work of fueling delivery trucks either before he clocked in or soon after clocking out, or during his lunch break. He explains that he purchased gasoline at a service station away from the defendant's plant because of the difficult access to the service station nearer the plant. Concerning the occasion on which he purchased gasoline hours after leaving work due to illness, he now states that the time shown when he clocked out is a handwritten entry not made by him, that he cannot recall when he left work due to illness that day, and that in his opinion, the clock-out entry shown "is a mistake or a deliberate misrepresentation."

Much of the plaintiff's affidavit is a lengthy analysis of his own time and gasoline purchase records, and of the time and gasoline purchases of other employees of the defendant, to show that purchases outside of normal working hours and at locations other than the service station nearest the defendant's plant were not unusual. The plaintiff does not show in his affidavit, however, that he and other employees of the defendant who purchased gasoline using company charge cards were similarly situated. For example, as the defendant's evidence shows, a route driver working a full-time shift, unlike a ship-

ping clerk working on a half-time schedule, would not have been expected to return to the plant to clock out and in for lunch. A driver on a route would not reasonably be expected to drive off of his or her route to purchase gasoline at the service station nearest the defendant's plant.

The plaintiff says also that during the time he was employed by the defendant, his disability stemming from a pre-employment automobile accident increased. In 1992, he fell twice in the workplace, but did not make any claim for workers' compensation benefits. A fall in 1993 at another place of employment led to his shoulder surgery, a period of recuperation, and his claim for disability insurance benefits under the Social Security Act, which the plaintiff says he made in anticipation of future total disability.

The plaintiff did not file claims for workers' compensation benefits, and chose not to make his employer, the defendant, aware of his claim for disability insurance benefits under the Social Security Act. These admitted facts weaken the plaintiff's claim that the defendant discriminated against him on the basis of a disability, for they indicate that the defendant was kept ignorant to a great extent of the plaintiff's physical condition.[6] The only evidence of a discriminatory motivation to which the plaintiff points is a statement by a co-worker that the defendant was experiencing difficulty with its insurance carriers, which the defendant speculatively relates to his own shoulder dislocations and post-surgery time off from work. The plaintiff concludes that he was not invited to a drivers' dinner, that no concern about his health problems was expressed on behalf of the defendant during his surgery, and that he was not advised of his August (1993?) evaluation because the defendant was concerned about potential liability for costs arising out of his health problems. The only

---

5. In his 21–page brief filed in opposition to the defendant's motion for summary judgment [doc. 12], in spite of the number of issues raised in this civil action, the plaintiff cites one authority, *Riley v. Dun & Bradstreet, Inc.,* 172 F.2d 303 (6th Cir.1949), concerning limitations in actions for libel. Counsel for the plaintiff, in the court's opinion, abdicated his responsibility to analyze the applicable law and argue it to the court.

6. In any event, "[k]nowledge of a plaintiff's disability alone cannot be the basis of inferring discriminatory action." *R.G.H. v. Abbott Laboratories,* 4 A.D. Cases 289, 298 n. 17, 1995 WL 68830 (N.D.Ill.1995) (citation omitted).

other evidence of discriminatory motivation cited by the plaintiff is the conversation with Ms. Cameron of the defendant during which she "urged" the plaintiff to discuss with the latter's physician the physician's recommendations of shorter work hours and less physically demanding tasks.

The plaintiff's evidence of defamation provided in his affidavit is as follows.

Since October, 1994, I have heard on several occasions from various employees with whom I have had continued contact, that the accusations against me for stealing and vandalism are a frequent topic of conversation at Alber's. Accordingly, I know of my own personal knowledge, that the original defamatory remarks accusing me of stealing and vandalism have been repeated on several occasions, since October, 1994.

█ The plaintiff, by focusing on the legitimacy of his gasoline purchases using a company charge card, and by attempting to show in great detail that other employees of the defendant engaged in the same or similar behavior, misses the point. After an adequate opportunity for discovery, the defendant has moved under Fed.R.Civ.P. 56 for a summary judgment of dismissal of the plaintiff's claims. That being the case, and the defendant having put forward evidence of a non-discriminatory business justification for its challenged conduct, the plaintiff's burden is to come forward with affirmative evidence which shows that whether the defendant discharged the plaintiff from employment because of his claimed disability is a jury-triable issue. See Street v. J.C. Bradford & Company, 886 F.2d 1472, 1479 (6th Cir.1989). The plaintiff must make a showing sufficient to establish the existence of this element of his claim, because it is an essential element, and one on which he would bear the burden of proof at trial. See Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is not the defendant's burden, in making its Rule 56 motion, to negate this element of the plaintiff's claim. Id. at 323, 106 S.Ct. at 2552–53.

█ A prima facie case of discrimination in violation of the ADA requires a showing that the plaintiff is a qualified individual with a disability, that the plaintiff has suffered an adverse employment action, and that a causal connection exists between the plaintiff's disability and the adverse employment action. Smith v. Upson County, Georgia, 859 F.Supp. 1504, 1514–15 (M.D.Ga. 1994), affirmed without opinion, 56 F.3d 1392 (11th Cir.1995) (citation omitted). Cf. Doherty v. Southern College of Optometry, 862 F.2d 570, 573 (6th Cir.1988), cert. denied, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989) (decided under the Rehabilitation Act of 1973 [7]) (apart from the required showing of a federal nexus, the elements needed to state a claim under the Rehabilitation Act are that the plaintiff is a "handicapped person" under the act, that the plaintiff is "otherwise qualified" to participate in the program from which he or she was excluded, and that "[t]he plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap."

█ Whether the plaintiff must show that his alleged disability was the sole cause of his discharge from employment, or merely that it contributed causally to the discharge, he has failed to do so in response to the defendant's motion for summary judgment. Viewed in the light most favorable to the plaintiff, the only evidence possibly relevant

7. The employment provisions of the ADA make applicable to the national economy the duties imposed by the regulations promulgated under the Rehabilitation Act of 1973, as amended, specifically 29 U.S.C. §§ 794–794a, and therefore judicial construction of those regulations in Rehabilitation Act cases may be used to construe similar terms in ADA cases. Vande Zande v. State of Wisconsin Department of Administration, 44 F.3d 538 (7th Cir.1995).

It is provided in 42 U.S.C. § 12201(a) that nothing in the ADA, except as otherwise provided in the act, "shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 790 et seq.) or the regulations issued by Federal agencies pursuant to such title."

In 1992, Congress amended the Rehabilitation Act to add 29 U.S.C. § 794(d), which provides that the standards used to determine whether the act has been violated in a complaint alleging employment discrimination in violation of the act shall be the same as those applied under the ADA.

to this element of his claim in the mass of evidence in the record before this court is that Ms. Cameron wanted the plaintiff to discuss with the plaintiff's physician being released to return to work full-time, some very non-specific evidence that the defendant had concerns about its insurance coverage, and the fact that the defendant terminated the plaintiff's employment soon after he returned to work part-time following his surgery. Were this case in the posture of being submitted to a jury, the court concludes, this evidence would not be sufficient to overcome a Fed.R.Civ.P. 50(a) motion for judgment as a matter of law, for it would invite a jury to engage in impermissible speculation.

█ Furthermore, the court cannot draw any inference of discrimination from disparate treatment because, in spite of his lengthy analysis of other employees' time cards and gasoline purchases, the plaintiff has not shown the existence of a co-worker in exactly similar job circumstances found by the defendant to have engaged in exactly similar acts. *Cf. Mitchell v. Toledo Hospital,* 964 F.2d 577, 582–83 (6th Cir.1992) (citation omitted) (decided under Title VII of the Civil Rights Act of 1964, as amended[8]) (to make out a *prima facie* case of disparate treatment by showing that a comparable employee in a non-protected class was treated better, a plaintiff must show his or her membership in the protected class, and "that for the same or similar conduct he was treated differently than similarly-situated non-minority employees;" the "comparables" must be "similarly-situated *in all respects*") (emphasis in original).

█ For these reasons, the plaintiff errs in devoting most of his attack upon the defendant's stated reason for terminating his employment as merely pretextual. In the absence of any evidence showing a genuine issue whether there was discrimination on the basis of disability, or a causal connection between discrimination on the basis of disability and the termination of the plaintiff's employment, the court need never reach the issue of pretext. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (decided under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983)[9].

█ Furthermore, the court finds, if the issue of pretext is before the court, that the defendant's evidence of a nondiscriminatory motivation for discharging the plaintiff from employment is unrebutted, and so overwhelming that summary judgment is justified. Again, in focusing on the relationship between his and others' time cards and his and others' gasoline purchases, the plaintiff misses the point, for it is the genuineness of the defendant's nondiscriminatory motivation which matters, not whether the defendant misinterpreted the evidence which its audit revealed, or whether the defendant made an unwise decision in discharging the plaintiff from employment for this reason, or whether the stated reason constituted "just cause." In *R.G.H. v. Abbott Laboratories,* 4 A.D. Cases 289, 1995 WL 68830 (N.D.Ill.1995), the plaintiff alleged adverse employment action on the basis of his status as HIV positive, and argued that the defendant employer's stated reasons for poor performance reviews of the plaintiff and for not promoting him were pretextual. In the course of awarding summary judgment in favor of the defendant employer, the district court addressed an argument that a performance appraisal made by a manager of the plaintiff was factually incorrect: "[t]he relevant inquiry is not whether Hall was right or wrong in her evaluation of RGH but rather the inquiry is whether or not the negative evaluations of RGH's performance were genuine and were the basis for the denial of a salary increase for RGH." *Id.* at 299 (citations omitted).

---

8. The ADA incorporates the "powers, remedies, and procedures" set forth in Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117(a).

9. The court emphasizes here that in ruling on the defendant's motion for summary judgment, the court is not making any assessment of the credibility of those whose evidence is before the court. The court's ruling is that, viewing all of the evidence offered by the plaintiff as true and in the best light, there is not sufficient evidence on the basis of which a rational trier of fact could find discrimination on the basis of disability, or a causal nexus between the termination of the plaintiff's employment and discrimination on the basis of disability.

92

Here, the plaintiff has offered no evidence from which a rational trier of fact could conclude that the defendant's belief that the plaintiff had engaged in conduct justifying dismissal was not genuine, *i.e.*, pretextual.

The court's conclusions stated in this memorandum opinion render it unnecessary to address the defendant's argument that the plaintiff's claim for Social Security disability insurance benefits estops him from claiming that he was otherwise qualified, with or without accommodation, to perform the job from which he was discharged. In this litigation, the plaintiff has repeatedly referred to his success in obtaining unemployment compensation over the defendant's opposition, but at oral argument, counsel for the plaintiff conceded that the ruling by the Tennessee Department of Employment Security cannot be treated as preclusive with respect to the issue whether the plaintiff stole gasoline— which, as the court has noted above, is not the true issue in this civil action. A glance at the written unemployment compensation ruling, a copy of which is in the record before this court, shows that the issue before the unemployment appeals referee was whether the plaintiff had engaged in misconduct as defined in that body of law, and that the referee imposed the burden of proof with respect to the issue of misconduct on the employer. These distinctions make the plaintiff's counsel's concession appropriate.

■ The court will accordingly dismiss the plaintiff's claim for relief under the ADA. Inasmuch as the plaintiff has disavowed any intention to state an independent cause of action under Tennessee statutory law prohibiting discrimination against the handicapped, and in the absence of any showing that the substantive standards under the Tennessee law differ from those under the ADA, the court will also dismiss the plaintiff's claim for relief under T.C.A. § 8–50–103.

With respect to the plaintiff's claim under Tennessee law for alleged libel and/or slander, the court finds it appropriate to decline to exercise supplemental jurisdiction of this claim, and so to remand it to the State court from which this civil action was removed. No claim arising under federal law remains in this civil action. The court has not set the action for trial. The defendant's motion for summary judgment, insofar as the defamation claim is concerned, raises issues under Tennessee law concerning the statement of a claim for defamation and limitations in defamation actions, issues better addressed in the Tennessee judicial system. The plaintiff's discrimination and defamation claims are not inextricably linked; the plaintiff alleges that defamation of him occurred after the termination of his employment which he attacks under the ADA. The defendant may address its motion, insofar as the defamation claim is concerned, to the Knox County Circuit Court upon remand, so that little judicial inefficiency will result from remand. In these circumstances, declining to exercise supplemental jurisdiction of the defamation claim and remanding what remains of this civil action to the State court are appropriate exercises of this court's discretion. 28 U.S.C. §§ 1367(c)(3) and 1447; *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Wexley v. Michigan State University,* 821 F.Supp. 479, 487 (W.D.Mich.1993), *affirmed without opinion,* 25 F.3d 1052 (6th Cir.1994).

II

■ As the court stated above, soon after the defendant removed this civil action to this court from the Knox County Circuit Court, the plaintiff moved to remand it to that court. This court considered the plaintiff's motion, and, in a memorandum and order filed on July 10, 1995 [doc. 8], denied the motion to remand, finding it frivolous. In accordance with Fed.R.Civ.P. 11(c)(1)(B), the court ordered the plaintiff's counsel to show cause against being sanctioned for filing this frivolous motion. The plaintiff's counsel filed a timely response to this order [doc. 10]. The court has delayed ruling on this matter until the conclusion of this litigation in this forum.

The plaintiff's counsel's argument that the motion to remand was not frivolous goes as follows, if the court understands it correctly. The plaintiff earlier commenced a civil action like this one, which the defendant removed, in light of the plaintiff's claim for relief under the ADA, and which was assigned to District

Judge Hull of this judicial district. The plaintiff moved to remand, and Judge Hull at first allowed voluntary dismissal of the plaintiff's State-law claims for defamation and wrongful discharge, but left pending the claim for relief under the ADA. This ruling was apparently made in recognition of the facts that a district court may in the exercise of discretion decline to consider a State-law claim over which it has only supplemental (as opposed to diversity) jurisdiction, 28 U.S.C. § 1367(c), and that following removal, the court could have remanded, under 28 U.S.C. § 1441(c), any claim in which State law predominated.

In the first civil action, the plaintiff objected to this splitting of his claims for relief, noting that if the district court awarded summary judgment on the ADA claim in favor of the defendant, the plaintiff would have to pursue an appeal to the Court of Appeals for the Sixth Circuit while simultaneously litigating his defamation and wrongful discharge claims in the Tennessee judicial system. The plaintiff therefore sought voluntary dismissal of the remainder of his civil action before Judge Hull, to which the defendant objected, noting that if the plaintiff, following voluntary dismissal, filed a second civil action stating the same claims, the defendant would remove the second action to this court.

In his order filed on January 17, 1995, in civil action no. 3:94–cv–0503 [doc. 28 in no. 3:94–cv–0503], a copy of which the plaintiff's counsel has submitted with his response to the court's order to show cause, Judge Hull reconsidered his ruling, and allowed the plaintiff to nonsuit his entire civil action. The plaintiff then filed his second civil action in the State court, which the defendant removed to this court. The proceedings following this removal have led to the rulings stated in this memorandum opinion.

The plaintiff's argument appears to be that because Judge Hull allowed the nonsuit of the first civil action in the face of the defendant's objection that a second civil action would likewise be removed to this court, Judge Hull implicitly ruled that removal of the second civil action would not be allowed. This is an absurd argument. First, as this court pointed out in its memorandum and order in which the court ordered the plaintiff's counsel to show cause against sanctions, existing law is clear on the point that a federal district court may no more remand a civil action removed in keeping with the applicable statutory procedures, and within the court's federal-question subject-matter jurisdiction, than it may dismiss, out of a disinclination to address it, a civil action brought originally in the district court on the basis of federal-question jurisdiction.

Second, the plaintiff's counsel's statement in his response to the court's order to show cause, "that it makes absolutely no sense for Judge Hull to exercise his discretion in our favor with the sure and certain knowledge, that this case would be inevitably and promptly removed back to his or a fellow court on the defendant's notice," ignores the simple fact that whenever a district court exercises its discretion to allow voluntary dismissal under Fed.R.Civ.P. 41(a)(2), it leaves open the possibility that the litigation will be revived by the filing of a second civil action. This possibility is, as every trial attorney and judge knows, what is meant by the phrase "without prejudice."

The plaintiff's counsel argues that Judge Hull's ruling established the law of the case, requiring remand of this civil action to the State court. This assertion is warranted neither by existing law nor by a nonfrivolous argument for the extension, modification, or reversal of existing law, or for the establishment of new law, for several reasons. First, as stated above, Judge Hull, in granting the plaintiff's motion for reconsideration filed in civil action no. 3:94–cv–0503, simply exercised his discretion to allow a nonsuit under Rule 41(a)(2), and did not make a ruling on any issue, especially not an advisory ruling that if a second civil action were filed, and it were removed to a federal district court, the district court would remand it. There was therefore no ruling to become the law of the case.

Second, even assuming the existence of a ruling to which the law of the case doctrine might apply in this case, the doctrine is a statement of sound judicial policy, not a rule of law. "In the absence of statute the phrase 'law of the case,' as applied to the

effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (*per* Holmes, J.). The doctrine is a policy intended to prevent relitigation of settled issues, expressed as a rule that once a court decides upon a rule of law, that rule should continue to govern the same issues in the same case. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815–816, 108 S.Ct. 2166, 2177–2178, 100 L.Ed.2d 811 (1988) (citations omitted). The rule does not deprive a court of the power to revisit its own or a coordinate court's decisions in any circumstance, and especially not in a case in which the prior decision was clearly erroneous or would work a manifest injustice if applied. *Id.* at 817, 108 S.Ct. at 2178 (citation omitted).

In *Dictograph Products Company, Inc. v. Sonotone Corporation*, 230 F.2d 131 (2d Cir.), *cert. dismissed*, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956), in an opinion authored by Judge Learned Hand, the Court of Appeals for the Second Circuit rejected an argument that the law of the case doctrine bound a district judge not to grant a motion for summary judgment in a civil action in which another district judge had previously denied such a motion. The court of appeals noted that the first ruling denying the motion was not appealable, so that if the second judge had been bound to follow it in spite of good justification for the motion, the movant would have had no recourse other than appeal after complete litigation at the trial court level. The court noted also that there was no reason why the first trial judge could not have reconsidered and overruled his own previous denial of the motion for summary judgment; the court of appeals held that the substitution of a second trial judge for the first did not so alter the situation as to prevent reconsideration of the order denying the motion for summary judgment.

In *Harbor Insurance Company v. Essman*, 918 F.2d 734, 738 (8th Cir.1990), the Court of Appeals for the Eighth Circuit agreed that the law of the case doctrine does not prevent a court from correcting its own errors, and held also that the doctrine means no more than that a ruling made in the course of litigation should govern the same issue or issues in subsequent stages of the same litigation. The court of appeals in *Harbor Insurance Company v. Essman* held that a second civil action after voluntary dismissal of the first one without prejudice is not "the same litigation" for the purpose of applying this construction of the law of the case doctrine.

In summary, Judge Hull made no ruling of the sort to which the plaintiff's counsel seeks to attach law of the case status. Even if he had, neither he nor the undersigned would have been compelled by such a ruling or by the doctrine to decline to exercise jurisdiction of the plaintiff's claim for relief under federal law, asserted in a second civil action removed to this court in keeping with applicable jurisdictional and procedural law. And had Judge Hull made such a ruling as the plaintiff's counsel reads into Judge Hull's written order, neither Judge Hull nor the undersigned would have been barred by the law of the case doctrine from revisiting the issue.

In responding to this court's order to show cause [doc. 10, attached brief], the plaintiff's counsel concedes that Rule 11, in rendering frivolous arguments sanctionable, uses an objective standard, not an "empty head, pure heart" one.[10] Based on the authorities reviewed above, the court finds the plaintiff's counsel's law of the case argument, like his other arguments made to support his motion to remand this civil action to the State court from which the defendant removed it, frivolous. Rule 11(c) therefore mandates a sanction in this case.

---

**10.** Rule 11(b)(3) provides that in presenting to the court a pleading, written motion, or other paper, an attorney is certifying that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

■ Any such sanction must "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). "The principal goal of Rule 11 sanctions is deterrence...." *Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 419 (6th Cir.1992) (citation omitted).

■ The court has considered the factors outlined in *Orlett v. Cincinnati Microwave, supra,* and comes to the conclusion that a reprimand of the plaintiff's counsel is the appropriate sanction in this case. Factors influencing this decision include the fact that the court noted the Rule 11 violation in this case *sua sponte,* the absence of a finding of bad faith on the part of the plaintiff's counsel in moving to remand this civil action to the State court from which the defendant removed it, the fact that a sanction of this nature renders it unnecessary to inquire into counsel's financial ability to pay a monetary sanction, and the fact that the filing of the motion to remand did not add significantly to the burden of litigation in this case, in light of the court's adjudication of the issues raised by the defendant's motion for summary judgment.

The court will therefore reprimand counsel for the plaintiff for his violation of Rule 11 in moving to remand this civil action to the Knox County Circuit Court. The court will direct the clerk to forward to the Board of Professional Responsibility of the Supreme Court of Tennessee a copy of this memorandum opinion, and a copy of the court's final order entered in this civil action.

### III

In summary, the court will grant the defendant's motion for summary judgment in part, and will dismiss the plaintiff's claims for relief under federal and Tennessee law for alleged employment discrimination on the basis of a disability. The court will not exercise supplemental jurisdiction of the plaintiff's claim for relief under Tennessee law concerning defamation, but will instead remand this remaining claim to the Circuit Court for Knox County, Tennessee.

The court finds that in moving to remand this civil action to the Knox County Circuit Court while there was still pending a claim for relief under federal law, the plaintiff's counsel violated Fed.R.Civ.P. 11(b)(2). The court will therefore sanction the plaintiff's counsel for this conduct with a reprimand, and will advise the Tennessee Board of Professional Responsibility of this reprimand.

### *ORDER*

For the reasons stated in the court's memorandum opinion filed with this order, the court finds the defendant's motion for summary judgment [doc. 2] well taken in part, and it is **GRANTED IN PART.** It is **ORDERED** that the plaintiff's claims for relief under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101–12213, and under Tennessee Code Annotated § 8–50–103 are **DISMISSED.**

It is further **ORDERED** that the plaintiff's remaining claim for relief, under Tennessee law concerning defamation, is **REMANDED** to the Circuit Court for Knox County, Tennessee, under 28 U.S.C. §§ 1367(c)(3) and 1447.

The court finds that in moving to remand this civil action to the Knox County Circuit Court while there was still pending a claim for relief under federal law, the plaintiff's counsel violated Fed.R.Civ.P. 11(b)(2). It is therefore **ORDERED** that the plaintiff's counsel is hereby **REPRIMANDED** for this violation of Rule 11. As part of this sanction of the plaintiff's counsel, the court directs the clerk to send a copy of this order and a copy of the court's memorandum opinion to the Board of Professional Responsibility of the Supreme Court of Tennessee.