**Hobert E. GANN, Plaintiff,**

v.

**CHEVRON CHEMICAL COMPANY,
d/b/a Plexco, Defendant.**

No. 3:98–cv–9.

United States District Court,
E.D. Tennessee.

March 10, 1999.

Linda G. Welch, Gary T. Dupler, Knoxville, TN, for plaintiff.

H. Bruce Guyton, J. Chadwick Hatmaker, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for defendant.

## MEMORANDUM OPINION

JARVIS, District Judge.

## MEMORANDUM OPINION

Plaintiff Hobert E. Gann seeks compensatory and punitive damages for injuries which he claims he suffered because of defendant's alleged discriminatory practices. Specifically, plaintiff contends that Chevron Chemical Company (Chevron) violated the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. §§ 12111, *et seq.*, the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621, *et seq.*, the Tennessee Human Rights Act (THRA), Tennessee Code Annotated §§ 4–21–101, *et seq.*, and the Tennessee Public Protection Act (TPPA), Tennessee Code Annotated § 50–1–304, when it terminated his employment on January 8, 1997. Plaintiff also contends that Chevron is liable to him based on violations of state law for both the intentional and negligent infliction of emotional distress, breach of contract, breach of the implied duty of good faith and fair dealing, tortious interference with contract, malicious harassment, and fraudulent misrepresentation.

This matter is presently before the court on defendant's motion for summary judgment as to all of plaintiff's claims against it [*see* Doc. 11]. The issues raised have been exceptionally well briefed by the parties [*see* Docs. 12, 17, and 21]. For the reasons that follow, defendant's motion will be granted in its entirety, whereby summary judgment will be entered in favor of defendant and this case will be dismissed.

## I.

### *Facts*

On June 29, 1992, Chevron hired plaintiff as a Class B Operator in the Specialty

Plastics Department (SPD) of its Knoxville Plexco Plant [see Plaintiff's Deposition at 40; [1] see also Ex. 14 to Plaintiff's Deposition]. Plaintiff was 47 years of age when he was hired by defendant [see Ex. 16 to Plaintiff's Deposition].[2] It is undisputed that plaintiff had been formerly employed at the Knoxville Plexco Plant (then called Extron) from 1969 to 1988 before Chevron bought the plant. Therefore, plaintiff possessed considerable experience as a machine operator and foreman prior to June 1992 [see Plaintiff's Deposition at 12–19].

After working as a Class B Operator for six months, plaintiff was promoted to SPD Lead Operator and then later promoted to Acting Foreman of SPD's third shift [see id. at 42]. In early August 1995, Supervisor Kyle Byrd notified plaintiff that SPD, beginning with the third shift, would be eliminated because of a slow-down in business [see id. at 49–51]. As a result, the entire SPD third shift, including plaintiff, was transferred to the Pipe Department. When this occurred, plaintiff was demoted from Acting Foreman and Lead Operator to Extruder Operator Class A [see Miller Deposition at 71–72].[3] Nevertheless, plaintiff continued to receive his higher rate of salary until December 21, 1995, because the Hire and Change Authorization (HCA) form was, by oversight, not completed in August [see Miller Deposition at 71–75]. It must also be emphasized that the normal shift in the Pipe Department lasted 12 hours, whereas the normal shift in SPD lasted 8 hours [see Plaintiff's Deposition at 80].

After his transfer to Pipe, plaintiff's first scheduled date to work was August 14, 1995 [see id. at 62]. Unable to work that day because of a foot problem, plaintiff "called in sick...." [Id. at 62–63]. Although plaintiff first experienced foot problems in March 1995 [see id. at 63], he never missed any work during his eight-hour shifts in SPD as a consequence [See id.]. The record reflects [see Ex. 5 to Plaintiff's Deposition], and the plaintiff admits [see Plaintiff's Deposition at 73–78], that he missed all but three of the scheduled work days after his transfer to Pipe in 1995. Specifically, plaintiff missed all of his scheduled work days from August 14, 1995, until December 18, 1995 [see id.]. Plaintiff then returned to work for two days but was unable to complete his shift on the third day, December 20 [see id.]. Following the plant's holiday shut-down, plaintiff missed his scheduled work days from January 5, 1996, through January 7, 1996, and again from January 11, 1996, through January 13, 1996 [see id.]. During this point in time, plaintiff provided Chevron with a note from Dr. Weissfeld restricting plaintiff's work day to an eight-hour shift [see id. at 89]. Consequently, Chevron transferred plaintiff back to SPD's second shift on January 22, 1996 [see id. at 86]. Plaintiff continued to provide Chevron with notes from his physician and releases for each of his non-vacation absences [see Plaintiff's Deposition at 73 and 89, and Exs. 6, 7, and 12 thereto; see also Holden Deposition [4] at 23–24, and Collective Ex. 4 thereto]. Plaintiff also testified that he constantly notified his supervisors, Ray Purkey and Ernie Lane, of his medical condition and treatment [see Plaintiff's Deposition at 74, and Exs. 8 and 9 thereto; see also Collective Ex. 2 to Lane Deposition and Collective Ex. 4 to Holden Deposition].

1. Excerpts from plaintiff's deposition are attached as Ex. A to Doc. 12, as exhibits to Doc. 17, and as Ex. 1 to Doc. 21. For brevity, the court will refer to plaintiff's deposition by page number only.

2. Although plaintiff testifies that he was 49 years of age when he was hired by Chevron [see Plaintiff's Deposition at 41], all of the other evidence in this case indicates that plaintiff was born on March 25, 1945, and therefore would have been 47 years old when he was hired by Chevron in June 1992. Either way, plaintiff was in the protected age category when Chevron hired him.

3. James Miller was Plexco's plant supervisor and was the individual who eventually terminated plaintiff.

4. Jodi Holden was hired by Chevron as its human resource assistant.

After his transfer back to SPD, plaintiff took vacation time from March 25, 1996, to March 29, 1996, and again from April 10, 1996, to April 13, 1996 [*see* Plaintiff's Deposition at 93]. On April 15, 1996, plaintiff underwent foot surgery and missed work from that day until June 3, 1996 [*see id.*]. On June 3, plaintiff worked a limited schedule pursuant to his doctor's orders [*see id.* at 95]. In particular, plaintiff worked four hour days during his first week and then worked six hour days during the next week in Plexco's Fabrication Department [*see id.* at 95–96]. After working these partial shifts in the Fabrication Department, plaintiff was reassigned to SPD where he worked until September 25, 1996 [*see id.* at 96–97]. At that time, all SPD shifts were eliminated and plaintiff was transferred back to Pipe [*see id.*]. Following his transfer to Pipe, plaintiff "called in sick and said [he was] going to the foot doctor[.]" [*Id.* at 98]. Thus, plaintiff missed all of his scheduled days of work in Pipe from his first day, September 25, 1996, through the day before the layoff, October 17, 1996 [*see id.; see also* Ex. 5 to Plaintiff's Deposition].

In September and October 1996, the Pipe Department experienced a downturn in business which required Chevron to lay off workers [*see* Miller Deposition at 57]. James Miller, the plant manager, was solely responsible for determining which employees would be laid off [*see id.* at 20]. To assist him in that endeavor, Mr. Miller relied on Chevron's lay-off and recall policy [*see id.* at 59]. Under the terms of this policy, lay-off decisions were to be based on the following criteria: (1) safety performance; (2) attendance; (3) the employee's overall job performance; and (4) the ability to do the remaining work [*see id.* at 118 and Ex. 12 thereto].

Utilizing this criteria, Mr. Miller selected eight employees, including plaintiff, for lay-off effective October 18, 1996 [*see id.* at 56]. Mr. Miller testified that he selected plaintiff to be laid off because of his "unsatisfactory job performance" which he defined as "[e]xcessive absenteeism . . . ." [*Id.* at 105–106]. Mr. Miller testified that he

did not know why plaintiff refused to go to work in Pipe—he just knew plaintiff "never even gave it a chance . . . ." [*Id.* at 104]. Mr. Miller certainly did not think it was "purely coincidental" that every time plaintiff was assigned to work in Pipe, he did not do so [*see id.* at 102]. In his brief, plaintiff argues that he told Mr. Miller that he would be able to work 12 hour shifts if therapy allowed him to do so [*see* Doc. 17, p. 5]. However, the court's review of plaintiff's deposition testimony does not indicate that plaintiff ever clearly told Mr. Miller he could not work 12 hour shifts [*see* Plaintiff's Deposition at 100 and 142]. In fact, plaintiff's testimony seems to indicate he would be able to do so [*see id.*].

In January 1997, the Pipe Department's business had improved to the extent that Chevron recalled to work six of the eight employees who had been laid off on October 18, 1996 [*see id.* at 57]. Plaintiff was not among those six because of his excessive absenteeism [*see id.* at 107]. It was for that same reason that Chevron terminated plaintiff's employment on January 8, 1997 [*see id.*]. Plaintiff then filed this lawsuit on January 6, 1998 [*see* Doc. 1].

## II.

### *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)). The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Although the moving

party bears the initial burden, it need not support its motion with affidavits or other materials *"negating"* the opponent's claim. *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original); *Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623, 626 (6th Cir.1987). Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554.

Once the moving party carries its initial burden of showing that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to come forward with specific facts to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.* However, the non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. The non-moving party must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

Upon review of all of the evidence relevant to the motion for summary judgment, a court should, after viewing the evidence in the light most favorable to the non-moving party, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12; *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117

L.Ed.2d 624 (1992). Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. at 2511; *Stein v. National City Bank,* 942 F.2d 1062, 1064 (6th Cir.1991).

## III.

### ADA Claims

The ADA prohibits employers such as Chevron from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1995). A "qualified individual with a disability" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. *Id.* § 12111(8). Plaintiff is considered to have a "disability" if: (1) he has an impairment that substantially limits one or more of his major life activities; or (2) there is a record of such an impairment; or (3) he is regarded by his employer as having such an impairment. *Id.* § 12102(2).

In order to establish a *prima facie* case of disability discrimination, plaintiff must prove that: (1) he was "disabled" within the meaning of the ADA; (2) he was qualified for the position, with or without an accommodation; (3) he suffered an adverse employment decision with regard to the position at issue; and (4) a non-disabled person replaced him or was selected for the position that the disabled person had sought. *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 882 (6th Cir.1996) (citation omitted). If plaintiff es-

tablishes the elements for a *prima facie* case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action it took against plaintiff. *Id.* at 883 (citation omitted). If the defendant carries that burden of production, plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but were merely a pretext for illegal discrimination. 97 F.3d at 883 (quotations and citations omitted). More specifically, a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions. *Id.* (citation omitted). The court will now turn to an application of the above legal standards to the facts of this case as they have developed to date.

Plaintiff must first establish that he is disabled as defined by the ADA. Plaintiff now contends that he meets all three definitions.[5] In support of his position, plaintiff has filed his affidavit in which he testifies in pertinent part as follows:

.    .    .    .    .

8. That I have not worked since January 1997, and I do not know if I am able to work as an extruder operator in the Pipe Department at Plexco for 12 hour shifts at the present time. However, I do know that I would be able to perform other duties at Plexco such as Tool Room, Tow Motor Operator/Utility position.

9. I was released by my treating doctors to resume work duties on January 20, 1997.

.    .    .    .    .

[*See* Plaintiff's affidavit, ¶¶ 8 and 9]. However, in his deposition, plaintiff testifies as follows regarding his ability to work as an extruder operator:

Q. Ok. What I am trying to clarify— and you just did it for me—if you had a job, your feet problem wouldn't prevent you from doing it?

A. No.

Q. Twelve-hour shift, you could do it?

A. I work on cars. Yeah. I try to stay busy.

Q. Lead operator on a 12-hour shift today in Chevron Pipe, you could do that job?

A. Not the lead operator job because I don't know the newer equipment the lead operator has to work with.

Q. Ok. Extruder operator in Pipe on a 12-hour job? Could you—

A. Yeah, I could do that, yeah.

Q. Your feet problems wouldn't prevent you from doing that?

A. I don't think so, no.

Q. Your blood pressure wouldn't prevent you from doing that?

A. Well, I'd get off the blood pressure medicine, I think, if I had a job.

Q. Ok. Your cholesterol wouldn't prevent you from doing that job?

A. No, no.

Q. And if SPD was still open at Plexco, I take it none of these problems that you mentioned, nerve problems of the feet, blood pressure, cholesterol, wouldn't prevent you from working in SPD?

A. If I hadn't have got laid off while I was under operation without notice, I don't think none of it would have happened as far as nervous and blood pressure, I never had high blood pressure.

Q. I understand that. My question was though could you do a job at SPD if it existed today?

A. Yes.

Q. Is there any job out in that plant today, Chevron, that you think you could not do because of all these problems that you mentioned?

A. No.

---

5. In his complaint, plaintiff alleges only that he suffered from a disability because Chevron perceived or regarded him as disabled [*see* Doc. 1, ¶ 20].

[Plaintiff's Deposition at 127–29]. It appears that plaintiff is attempting to create a genuine issue of material fact and therefore defeat Chevron's motion for summary judgment by submitting an affidavit that contradicts his prior deposition testimony. Specifically, plaintiff now testifies by affidavit that he does not know if his foot problems and other related health problems would allow him to work as an extruder operator in the Pipe Department on a 12–hour shift, whereas he testifies in his prior deposition that his foot problems would not prevent his doing so. To the extent that plaintiff is attempting to create a factual issue by the filing of his subsequent contradictory affidavit, it cannot be considered by the court for obvious reasons and is a position supported by *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986).

■ Moreover, even if the court considers his contradictory affidavit, plaintiff's testimony in that affidavit, as well as in his deposition, clearly establishes that he does not have an impairment that substantially limits him in the major life activity of working. In order for an individual to be substantially limited in the major life activity of working, the individual must be unable "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills and abilities...." *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Plaintiff's affidavit and his deposition testimony reflect that his foot problems never did—and do not now—substantially limit him in the major life activity of working. In fact, plaintiff never missed a day of work because of foot problems when he was working eight hour shifts. Thus, plaintiff has failed totally in his effort to convince the court that he has had, or presently has, a disability under the ADA.

Nevertheless, because much of the evidence in this record concerns itself with plaintiff's present condition, it is mostly irrelevant. Rather, this court must determine whether the plaintiff "was a 'qualified individual with a disability' *at the time of the discriminatory act.*" *Kocsis*, 97 F.3d at 884 (emphasis in original). Because the record is arguably unclear with respect to the extent of plaintiff's disability based on his foot problems at the time Chevron terminated him, the court will assume, for purposes of defendant's motion only, that plaintiff has established that he is disabled under the ADA Even so, plaintiff's ADA claim falls short.

■ In order to establish a *prima facie* case of disability discrimination, plaintiff must next prove that he was qualified for the position of extruder operator with or without an accommodation. *See id.* at 882. On this issue, the record is extremely clear that plaintiff was unable to perform the essential functions of the extruder operator position at the time he was terminated, with or without reasonable accommodation. An employee who cannot meet the attendance requirements of the job at issue cannot be considered a qualified individual protected by the ADA. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.1998) (quotations and citations omitted). In *Gantt*, the Sixth Circuit held that a plaintiff who was terminated after she failed to return to work following a one-year leave of absence had not been terminated because of either her age or alleged disability. *Id.* at 1047.

Here, the record reflects that from August 14, 1995, through October 18, 1996, plaintiff missed in excess of 100 days of work and 1,000 hours of work time. In fact, plaintiff missed every single day that he was scheduled to work from August 14, 1995, until December 18, 1995. Significantly, plaintiff failed to report to work the very first day he was transferred to Pipe on August 14, 1995, and again when he was reassigned to Pipe on September 25, 1996. The court agrees with Mr. Miller's assessment that plaintiff's failure to report to work when reassigned to Pipe was not "purely coincidental." Plaintiff's message to Chevron was quite clear—he was refusing to work in Pipe. Plaintiff never even

tried to work a 12 hour shift when he was reassigned to Pipe. Thus, plaintiff fails miserably in his attempt to establish himself as a qualified individual under the ADA because he could not meet the attendance requirements of his assigned job.

■ Furthermore, even if the court assumes that plaintiff has established a *prima facie* case of discrimination under the ADA, his claim must still fail because Chevron has articulated a legitimate, non-discriminatory reason for plaintiff's discharge—again, his excessive absenteeism. It is significant to the court that plaintiff was well aware of the attendance policy requirements, as plaintiff himself assisted in the drafting of Chevron's policy [*see* Plaintiff's Deposition at 111; *see also* Ex. B to Doc. 21]. Moreover, plaintiff admitted that excessive absenteeism is a valid ground for terminating an employee, specifically testifying as follows:

Q. I understand. Do you agree with me that, not getting into the reason for your absenteeism at this point; I understand what you are saying there. But do you agree with me that coming to the job, regular attendance, is a critical part of every job?

A. True. I have written people up for it. I have laid them off for it. I have terminated them for it. That's number one. If you are not there, you cannot perform.

[Plaintiff's Deposition at 120]. In short, the evidence in this record fully supports a finding that Chevron's legitimate, non-discriminatory reason for discharging plaintiff was his excessive absenteeism rather than any alleged disability under the ADA. This finding is also buttressed by plaintiff's refusal to even attempt to work in Pipe when reassigned.

■ Because Chevron has articulated a legitimate, non-discriminatory reason for its termination of plaintiff, summary judgment must be granted unless plaintiff can prove that the articulated reason was nothing more than a pretext to mask a discriminatory animus against him because of his "perceived disability." *Kocsis*, 97 F.3d at

883. Plaintiff has three methods available to him to establish pretext. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). First, plaintiff can show pretext by proving by a preponderance of the evidence that the proffered reasons had no basis in fact. *Id.* Second, plaintiff can establish pretext by proving that Chevron's stated reason for terminating him was not the actual motivation for his discharge. *Id.* Finally, plaintiff can establish pretext by showing that the stated reason for his termination was insufficient to motivate the discharge. 29 F.3d at 1084.

■ Here, plaintiff cannot show that Chevron's termination of his employment for excessive absenteeism has no basis in fact. Plaintiff has admitted the accuracy of Chevron's record of his excessive absenteeism, which included 100 days and 1,000 hours of missed work during 1995 and 1996. Similarly, plaintiff cannot show that Chevron's articulated reason for terminating his employment was not the actual reason for his discharge. The testimony on this issue is undisputed that James Miller, the plant manager, was solely responsible for determining which employees would be laid off from work and that he laid plaintiff off because of his excessive absenteeism.

Finally, plaintiff cannot prove pretext under the third method, which requires him to show that his excessive absenteeism was an insufficient basis for terminating his employment. In order to make this showing, a plaintiff typically offers evidence that employees not within the protected class were not terminated even though they also engaged in "substantially identical conduct to that which the employer contends motivated its discharge of plaintiff...." *Manzer*, 29 F.3d at 1084. The record contains no evidence whatsoever that other unprotected employees with similar work records were not also discharged. In order to do so, plaintiff would have to show that some other unprotected Chevron employee had missed over 100

days and 1,000 hours of work in a period of only two years and, yet, Chevron continued to employ him. Therefore, Chevron is entitled to summary judgment on plaintiff's ADA claims.

## IV.

### THRA Claims

The court's analysis of plaintiff's ADA claim is likewise applicable to his state law THRA discrimination claim. *See Thorpe v. Alber's, Inc.*, 922 F.Supp. 84, 92 (E.D.Tenn.1996). In *Thorpe*, Judge Jordan held that "in the absence of any showing that the substantive standards under Tennessee law differ from those under the ADA, the court will also dismiss plaintiff's claims for relief under T.C.A. § 8–50–103." *Id.* Consequently, plaintiff's failure to present any material evidence of disability discrimination under the ADA mandates that summary judgment be entered in Chevron's favor with respect to his THRA claims.

## V.

### ADEA Claims

■■ Plaintiff next alleges that Chevron's termination of his employment constituted age discrimination in violation of the ADA and the THRA.[6] Under the modified *McDonnell Douglas* framework,[7] a plaintiff must first establish a *prima facie* case by showing that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a person outside the class. *See Bush v. Dictaphone Corporation*, 161 F.3d 363, 368 (6th Cir.1998); *see also Mitchell v. Toledo Hospital*, 964

F.2d 577, 581 (6th Cir.1992). If the plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to produce evidence of a nondiscriminatory reason for its action. *See Barnett v. Department of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir.1998). If the defendant can come forth with such a reason, the burden returns to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *See id.*

■ Here, Mr. Gann easily satisfies the first two factors—he was within the protected class because of his age, and he was both laid off and terminated, each of which is clearly an adverse employment action. Additionally, it does not appear that the defendant has disputed the plaintiff was replaced by someone younger than 40. Thus, the only issue is whether or not plaintiff is "otherwise qualified" for the position of extruder operator. In the court's opinion, plaintiff cannot make this showing because of his excessive absenteeism. In view of the undisputed record regarding his inability to work in 1995 and 1996, plaintiff simply could not fulfill his responsibilities consistent with Chevron's expectations. However, because the Sixth Circuit has not addressed the precise requirements for satisfying the "otherwise qualified" factor, *see Bush*, 161 F.3d at 368, this court further concludes that, even if plaintiff has presented a *prima facie* case of age discrimination, Chevron has articulated a legitimate, non-discriminatory reason for his discharge based on his excessive absenteeism.

■ Nevertheless, in an attempt to survive the pending motion for summary judgment, plaintiff contends that his fail-

---

6. The analysis of the federal ADA discrimination claim is applicable to the state THRA discrimination claim. *Newsom v. Textron Aerostructures*, 924 S.W.2d 87, 96 (Tenn.Ct.App. 1995). In *Newsom*, the court held that "the purpose of the THRA is essentially identical to the ADA; therefore, federal authority interpreting the ADA is often utilized by courts of the state in applying the THRA." *Id.* at 96 n. 12.

7. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also O'Connor v. Consol. Coin Caterers Corporation*, 517 U.S. 308, 310–13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (modifying the *McDonnell Douglas* framework for an ADEA case).

ure to receive a verbal and written warning prior to being terminated for absenteeism shows that Chevron's articulated reason for his termination is pretextual. Plaintiff further relies on certain statistics to establish pretext. Neither argument has merit.

In reaching this conclusion, the court attaches much weight to plaintiff's own testimony. First, plaintiff was extremely familiar with Chevron's attendance policy because he played a key role in drafting the policy and reviewing it with all the employees on his shift [*see* Plaintiff's Deposition at 111]. Second, plaintiff admits that when Chevron laid him off on October 18, 1996, he knew that his lay-off resulted from his poor attendance record [*see id.* at 114]. Plaintiff also admits that he knew he could be terminated without first receiving any warning for his absenteeism [*see id.* at 157–58 and 167–68]. Finally, as previously noted, plaintiff has admitted that excessive absenteeism is a legitimate reason for terminating an employee and that he had personally "laid off" and "terminated" employees for it [*see id.* at 120]. Thus, in the court's opinion, plaintiff's admissions indicate that his failure to receive a verbal and written warning for his excessive absenteeism is insufficient to establish pretext and defeat Chevron's pending motion for summary judgment. *See also Gantt,* 143 F.3d at 1049 (affirming district court's opinion which held that pretext was not established by the fact that plaintiff did not receive a warning prior to her termination).

Plaintiff further contends that he has established pretext based on the fact that five of the six employees who were recalled from the October 1996 layoff were under the age of 40. However, "[a]ge discrimination cannot be inferred based solely on the ages of rehired workers." *Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1025 (6th Cir.), *cert. denied,* 510 U.S. 861, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993) (citation omitted). Furthermore, plaintiff admits that he has no knowledge about the attendance, performance, or safety records of the employees who were laid off and subsequently recalled [*see* Plaintiff's Deposition at 113]. In view of the fact that Chevron's plant manager, Jim Miller, testified that these factors are the very criteria which formed the basis for the layoff decisions [*see* Miller Deposition at 59], the fact that five of the employees recalled were under the age of 40, standing alone, does not establish age discrimination. *See Simpson v. Midland–Ross Corporation,* 823 F.2d 937, 943–44 (6th Cir.1987) (holding that statistical evidence of discrimination based on the ages of employees did not have sufficient probative value to establish age discrimination without additional supporting information regarding worker qualifications). Plaintiff therefore has not established pretext based on the ages of the recalled workers.

Likewise, plaintiff's reliance on the ages of employees hired at Chevron from February 1995 through September 1998 is insufficient to establish pretext. Initially, the court observes that this information is irrelevant in plaintiff's case because plaintiff does not claim and, indeed cannot do so, that Chevron failed to hire him because of his age in that he was 47 when he was hired by Chevron. This fact standing alone makes the court extremely reluctant to find that Chevron engaged in age discrimination. *Cf. Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991) (holding that a strong inference exists that age was not the reason for termination where the same individual who hires the plaintiff knowing the plaintiff is within the protected age group subsequently decides to fire the plaintiff). Furthermore, the court finds that these hiring statistics are of limited utility because they do not reflect the ages of individuals who actually applied for employment during that time frame and, more importantly, the qualifications of any of these applicants. The court therefore finds that these bare statistics are insufficient to establish that Chevron's articulated reason for terminating plaintiff was a pretext for age discrimination. *See Simpson,* 823 F.2d at 943–44. Hence,

summary judgment will be entered in Chevron's favor as to plaintiff's claims for age discrimination under the ADEA and THRA.

## VI.

### *Malicious Harassment*

■ Plaintiff next alleges that Chevron maliciously harassed him in violation of T.C.A. § 4–21–701, which provides as follows:

(a) There is hereby created a civil cause of action for malicious harassment.

(b) A person may be liable to the victim of malicious harassment for both special and general damages, including, but not limited to, damages for emotional distress, reasonable attorney's fees and costs, and punitive damages.

T.C.A. § 4–21–701 (1998). Here, plaintiff contends that this statute was violated not only because the defendant laid him off and terminated him, but also because the defendant withheld his short term disability and COBRA benefits and lowered his rate of pay, even though plaintiff admits that he eventually received his short term disability and COBRA benefits.[8] Additionally, plaintiff contends that he was harassed by defendant because: (1) he was placed on a third shift with trainee employees, rather than experienced workers; (2) his lack of a set-up operator; and (3) he was unable to take his lunch break on several occasions [*see* Plaintiff's Deposition at 147].

In the court's opinion, the utilization of this statute in the context of employment discrimination would indeed be rare. If the above facts represent the full breadth of what plaintiff claims are "malicious harassment," then his attempt to employ this statute under the facts of this case almost borders on the absurd. The court can find nothing malicious nor harassing about the way Chevron treated Mr. Gann. Rather, the court finds that plaintiff's workplace complaints do not amount to any more than arguable inconveniences. They are certainly not the sort of activities which would give rise to an action for malicious harassment, even under a liberal interpretation of this statute.

## VII.

### *All Other Claims*

Plaintiff also alleges that the above facts constitute intentional infliction of emotional distress, negligent infliction of emotional distress, fraudulent misrepresentation, and violation of the Tennessee Public Protection Act.[9] In light of plaintiff's testimony and for the reasons set forth in defendant's briefs [*see* Doc. 12, pp. 16–19, 21–24 and Doc. 21, 13–17], the court finds these claims to be *totally* without merit, and summary judgment will be entered in defendant's favor.

Order accordingly.

### ***ORDER***

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that defendant's motion for summary judgment [Doc. 11] be, and the same hereby is, GRANTED IN ITS ENTIRETY, whereby summary judgment is ENTERED in favor of defendant with respect to all of plaintiff's claims against it.

---

8. *See* letter dated January 13, 1997, to plaintiff from plant manager Miller in which defendant admitted that plaintiff's short term disability should have continued until he was released by his doctor or it was exhausted, whichever occurred first. [*See* Doc. 13, attachment]. Thus, defendant conceded that it owed plaintiff "164 hours at full pay and 320 hours at half pay." [*See id.*].

9. Plaintiff has apparently abandoned his claims of breach of contract, breach of the implied duty of good faith and fair dealing, and tortious interference with contract [*see* Doc. 17, p. 19].