**Lucile BARNETT, Plaintiff–Appellant,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Defendant–Appellee.**

**No. 96–6145.**

United States Court of Appeals, Sixth Circuit.

Argued July 29, 1997.

Decided Aug. 28, 1998.

did not clearly err in its findings and therefore affirm.

Michael L. Boylan (argued and briefed), Louisville, KY, for Plaintiff–Appellant.

Terry M. Cushing, Asst. U.S. Atty. (briefed), Richard A. Dennis, Asst. U.S. Atty. (argued), Regina S. Edwards (briefed), Office of U.S. Attorney, Louisville, KY, for Defendant–Appellee.

Before: JONES, NELSON, and RYAN, Circuit Judges.

**OPINION**

NATHANIEL R. JONES, Circuit Judge.

Plaintiff Lucile Barnett appeals the denial of her gender and age discrimination claims under Title VII of the Civil Rights Act of 1964, 78 Stat. 255, 42 U.S.C. § 2000e–2(a)(1) and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, following a bench trial below. Barnett claims that her supervisor intentionally discriminated against her and forced her removal from the Vocational Rehabilitation and Counseling section of the Department of Veterans Affairs (DVA). Having considered the record developed below, we find that the district court

## I.

Plaintiff Lucile Barnett worked as a counseling psychologist in the United States Department of Veteran Affairs (DVA) for four years, beginning on August 8, 1987. Her employment followed a previous Title VII action in which Barnett successfully alleged that the DVA wrongfully reduced her rank from GS–12 to GS–7.[1] As a counseling psychologist, Barnett's duties required her to use her professional assessments of her veteran clients to provide them with "services and assistance" to achieve their employment goals. If her professional assessment permitted, Barnett classified some of her clients as "seriously disabled" or "employment handicapped" in which case such persons were entitled to certain benefits.

Barnett, along with other staff counseling psychologists, was evaluated annually under a Performance Appraisal Plan (PAP). Each year, her superiors would assess her performance as "Outstanding," "Excellent," "Fully Successful," or "Unsuccessful." At the beginning of the evaluation year, the VA staff provided each counseling psychologist with a specific numeric minimal level of performance. All indications are that the minimum performance levels were uniform. In 1991, the year at issue, Barnett received her PAP and was required to make no more than 10 procedural, 6 judgmental, or 3 substantive errors.[2] Towards the end of the performance appraisal year, a staff supervisor would review each counseling psychologist's

1. The prior Title VII litigation resulted in Barnett's placement as a counseling psychologist in the DVA.

2. According to the DVA, these errors had very definite meanings, which were defined in Department of Veterans Benefits Circular 28–82–1 as follows:
 1. *Substantive Error:* A serious deviation from established guidelines which affects the improper, incorrect or timely denial or granting of a benefit when the correct action would have had the opposite result. The term "benefit" is not restricted to monetary consideration, but also includes

any other entitlement right subject to disposition.
 2. *Judgmental Deficiency:* An inadequate reasoning process leading to a decision or opinion which may be considered to be inappropriate based on the facts of record and applicable program guidelines. This definition also applies to deficiencies which are considered to be of greater significance than procedural or mechanical discrepancies.
 3. *Procedural Discrepancy:* A deviation from established method or form which does not have actual or potential effect on entitlement rights.

record to determine whether the requisite minimum had been attained.

Prior to 1991, Barnett had received satisfactory marks as a result of her performance. However, in March, 1991, near the end of the appraisal year, Leonard Mullins, Barnett's supervisor, sent her a warning letter marked "Warning of Unacceptable Performance—Notice of Opportunity Period." The letter stated that Barnett had committed seven substantive errors in the performance appraisal year, four more than allowed under the PAP. Mullins further informed Barnett that she would be given an opportunity period of 60 days to improve her performance. The letter specified that Barnett could make no more than one substantive, two judgmental or four procedural errors during the 60 day period.

It is clear from the record that Mullins and Barnett had a stormy relationship. The district court found that Mullins grabbed a pencil from Barnett in the course of a discussion, which she viewed as an act of physical intimidation. There was also uncorroborated testimony from another counseling psychologist, Catherine Marie Zachgo, that Mullins disliked Barnett and joked about her performance to other counseling psychologists.

After the opportunity period passed, Mullins reviewed Barnett's cases and found eight substantive errors, thirteen judgmental errors and eighteen procedural errors. Mullins subsequently sent Barnett a notice of removal along with an offer to respond to the proposed action. Although Barnett contested the removal notice both orally and in writing, the Central Office of the DVA approved the decision. Ray Hill, a younger male employee, replaced Barnett.[3]

Subsequently, Barnett filed a complaint in federal district court on September 18, 1991, alleging that the DVA engaged in age and gender-based discriminatory employment practices in violation of the ADEA and Title VII of the Civil Rights Act of 1964. Specifically, Barnett contended that the DVA, through its agent Leonard Mullins, had treated her in a discriminatory fashion and retaliated against her as a result of her 1991 EEO complaint. The district court conducted a bench trial and, in a Memorandum Opinion filed on July 22, 1996, concluded that Barnett had presented a prima facie case of age and gender discrimination but had failed to demonstrate that the DVA acted in a pretextual manner under *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Having heard all of the evidence presented at trial, the district court made the following observation:

> While the Court realizes that the opinions of counseling psychologists may often be matters for reasonable disagreement as between them and their superiors, and it also realizes that in some cases the opinions called for on the part of a counseling psychologist are in fact somewhat subjective, it still remains the case that the reasons for Dr. Barnett's discharge were not fabricated nor pretextual; therefore she is not entitled to recover either under the trilogy of cases decided prior to *Hicks* or under *Hicks* itself. J.A. at 281 (Memorandum Opinion) (parenthetical omitted).

Regarding Barnett's retaliation claim, the district court examined the claims in light of this court's decision in *Cooper v. City of North Olmsted,* 795 F.2d 1265 (6th Cir.1986), to find that Barnett had not established a prima facie case of retaliation because her previous EEO activities had no link to her discharge based on the objective performance criteria.

Barnett then filed this timely appeal.

## II.

We review the district court finding that Barnett failed to establish pretext for clear error. *See Kline v. Tennessee Valley Authority,* 128 F.3d 337, 341 (6th Cir.1997) ("A determination of pretext is an intermediate factual step in the determination of the ultimate factual finding of intentional discrimination or the lack thereof. It is a finding of fact subject to the clearly erroneous standard of review.").

---

3. The precise age of Ray Hill does not appear in the record; however, Barnett claimed in her testimony that Hill was "around 40" and neither party has disputed that point.

In order to prevail under Title VII, Barnett must first establish a prima facie case of gender discrimination, which requires that she prove that: (1) she is a member of a protected class; (2) an adverse employment decision was made against her; (3) she was otherwise qualified for the position from which the adverse decision arose; and (4) a person not of her protected class replaced her. See *Ensley–Gaines v. Runyon*, 100 F.3d 1220, 1224 (6th Cir.1996); *Cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the prima facie elements have been established, the defendant must produce evidence that a legitimate non-discriminatory reason motivated the employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The burden of persuasion then returns to the plaintiff to demonstrate that the reason proffered by the defendant was pretextual. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089 (1981); *Goostree v. Tennessee*, 796 F.2d 854, 861–63 (6th Cir. 1986).

Under the ADEA, a plaintiff must proffer evidence of the following to make out a prima facie case of age discrimination: (1) that plaintiff was between 40 and 65 years old; (2) that she was qualified for the particular position; (3) that she was subjected to adverse employment action; and (4) that she was replaced by a younger individual. See *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 246 (6th Cir.1997); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1390 (6th Cir.1993). Once a prima facie case has been established, this court applies the shifting burden framework of *McDonnell Douglas* to age discrimination cases as well. See *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir.1994).

The district court properly found that Barnett had established a prima facie case of age and gender discrimination. Barnett was 51 years old when she was discharged from her employment, and she was replaced by a substantially younger male, Ray Hill. The parties do not dispute this finding on appeal. As justification for its decision, the DVA proffered evidence at trial that Barnett simply failed to perform according to the PAP, which resulted in her warning notice and eventual removal.

■ Under both theories of discriminatory treatment, the district court found that Barnett had failed to demonstrate that the reasons for her termination as provided by the employer were pretextual under *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under *Hicks*, a plaintiff seeking recovery under Title VII and the ADEA bears the burden of proof of discriminatory animus, notwithstanding the failure of the defendant's proffer of legitimate nondiscriminatory reasons for the adverse employment action. See *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742; *Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1095 (6th Cir.1996); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584 (6th Cir. 1992). In other words, if the defendant fails to present *any* legitimate nondiscriminatory reasons for its actions, the trier of fact may still find that discrimination has been proven on the facts; however such a finding may not be premised simply upon the failure of the defendant to carry its burden of production. *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742 (rejection of the defendant's proffered reasons will permit the fact-finder to infer the ultimate fact of intentional discrimination without the requirement of additional proof of discrimination); *E.E.O.C. v. Yenkin–Majestic Paint Corp.*, 112 F.3d 831, 835 (6th Cir.1997) ("[T]he law allows a factfinder to infer intentional discrimination from proof of the prima facie case coupled with a disbelief of the proffered reason for the employer's action, but such an inference is not required."); *Ensley–Gaines v. Runyon*, 100 F.3d at 1227 (evidence of pretext presented by plaintiff sufficient to permit a reasonable fact-finder to infer that defendant engaged in discriminatory conduct); *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996) (finding that the fact-finder must review all of the facts together to determine whether evidence of pretext is sufficient to

support a finding of discrimination).[4] We find the conclusion of the district court not to be clearly erroneous.

Having had the benefit of a bench trial in which both sides presented witness testimony and other evidence, the fact-finding and credibility assessments of the trial court are entitled to substantial deference. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ Barnett contends, as she did below, that Mullins applied the outmoded SQC system while the rest of the DVA employees were subject to the QRS system. The district court pointed out that Barnett knew that her PAP mandated that she make no more than ten procedural, six judgmental or six substantive errors. By her own account, Barnett concedes that the performance measures used in the QRS system, which uses "measurement indicators" error identification, differ substantially from the SQC system. Thus, her awareness that the SQC performance measures applied seems to undercut her allegation that an alternative performance standard had been adopted. Moreover, we take note of Barnett's claim that the number of permissible errors granted to her

during the opportunity period left less room for error than the performance standards used throughout the appraisal year. However, we are not in the position of the trier of fact to consider this evidence, and under the clearly erroneous standard of review, the determination of the trial court need only be plausible as to this fact. While the trial court did not expressly state that the opportunity period performance standards failed to evidence discrimination, we find it significant that, even under Barnett's own calculations, her seven substantive errors would have exceeded a strictly proportioned opportunity period performance standard.[5]

■ Further, as to Mullins' conduct generally, the trial court, based upon evidence presented during the proceedings, found that the personal dislike between Mullins and Barnett did not amount to discrimination on the part of the former. Indeed, the trial court found that the sole witness on Barnett's behalf who corroborated her accounts that Mullins had referred to her as a "bitch", Eric Shrader, had a personal bias against Mullins, demonstrated by his statement that he had been constructively discharged from the DVA when in fact he had been placed with another agency after losing out to Mullins in a quest for the supervisor position held by Mullins. Moreover, these statements would have pre-dated Mullins' tenure as Barnett's supervisor. The statements of Catherine Zachgo, which detailed that Mullins made it known that he disliked Barnett and used her as the butt of office jokes, are

4. The statements of the district court in its Memorandum Opinion come dangerously close to presuming that *Hicks* introduced an additional requirement that the plaintiff prove actual discrimination. "While pretext may be persuasive on the issue of discrimination, plaintiff must prove that there actually exists discrimination." J.A. at 280 (Memorandum Opinion); *see also* Maj. Op. 341. As this court's decision in *Kline* makes clear, and as we have attempted to state further, *Hicks* merely requires that the fact-finder decide the case on the facts. No proof other than that required under the *McDonnell Douglas* formula is required of the plaintiff. *See Kline*, 128 F.3d at 346 ("The decisions of this circuit [ ] indicate that a plaintiff is not required to introduce additional evidence of discrimination [beyond evidence of pretext] to prevail."). *Manzer*, 29 F.3d at 1083 (finding that *Hicks* rejected both

the "pretext only" and the "pretext plus" positions and "Hicks clarified that the only effect of the employer's nondiscriminatory explanation is to convert the inference of discrimination based upon the plaintiff's prima facie case from a mandatory one which the jury *must* draw, to a permissive one the jury *may* draw[.]").

5. According to Barnett, the annual performance standards permitted 14.45% upper control limit percentage of error with regard to substantive errors, while the opportunity period performance standards upon which she was appraised left her with a 5.21% upper control limit percentage of error. Had Mullins applied the annual performance standard percentage to the opportunity period, so the argument goes, Barnett would have been permitted 6.52 substantive errors.

consistent with personal dislike rather than discriminatory animus, as the district court pointed out. Thus, we are inclined to defer to the district court's assessment of the witness testimony proffered by Barnett. *See Anderson,* 470 U.S. at 575, 105 S.Ct. 1504. As the district court stated, "personal conflict does not equate with discriminatory animus." While, under other circumstances, proof of personal conflict may provide some indicia of discriminatory animus, such is not the case here. We therefore uphold the district court determination that discriminatory treatment did not cause Barnett's termination.

■ Turning now to the claim of retaliation presented by Barnett, we note that Barnett must prove by a preponderance of the evidence that: (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of her civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Johnson v. U.S. Dep't of Health and Human Services,* 30 F.3d 45–7 (6th Cir.1994); *Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990) (per curiam). Once the plaintiff establishes this predicate, this court applies the *McDonnell Douglas* shifting burden model. Thus, the defendant must articulate a legitimate nondiscriminatory reason for its adverse employment action, whereupon the plaintiff is afforded an opportunity to show that the proffered nondiscriminatory reason is pretextual.

The trial court properly found that Barnett had engaged in EEO activities prior to her discharge. Indeed, her very employment as a counseling psychologist came about as a result of her EEO actions. Nevertheless, the district court concluded that no causal connection existed between Barnett's participation in EEO activity and her termination. We find that the conclusion of the district court did not rise to the level of clear error.

As suggested above, Barnett worked in the Vocational Rehabilitation and Counseling Department for three years apparently without incident. Her PAP marks demonstrated satisfactory performance during that period.

Therefore, the district court decision, finding no causal connection between the termination of Barnett and her pre–1987 EEO actions, does not comprise clear error.

Further, the record supports the district court finding that Barnett's EEO activities subsequent to 1987 were not linked to her termination. Barnett filed a successful EEO complaint against Mullins to correct her performance appraisal for the period of August 2, 1987 to March 31, 1988. Yet, she continued to receive satisfactory performance marks from Mullins. On December 31, 1990, Barnett filed another EEO complaint on the basis of a "memorandum of exceptions," which she claims resulted from her filing of a previous complaint in 1990. The DVA General Counsel consolidated the December 31, 1990 complaint and four subsequent complaints filed by Barnett immediately preceding and following her receipt of the warning letter and later receipt of a notice of removal letter into a single complaint. The fact remains, however, that Barnett failed to meet the performance criteria set forth in her PAP. As required by law, the DVA provided Barnett with an opportunity period to improve her performance. Sadly, Barnett failed to meet the standards imposed on her during that period by exceeding her allowed number of substantive errors by six. Based on her failure to perform according to the objective performance standards, we find that the district court determination does not evidence clear error with respect to the retaliation claim and thus affirm.

### III.

After careful consideration of the claims submitted by Barnett on appeal, we conclude that the district court determination that she failed to prove pretext does not comprise clear error. Further, given the history of her EEO activities and satisfactory marks, we conclude that Barnett has not established a prima facie case of retaliation. We **AFFIRM.**