**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0003n.06
Filed: January 3, 2005

**No. 03-3979**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CLAUDETTE WALCOTT,

    **Plaintiff-Appellant,**

v.

CITY OF CLEVELAND, MICHAEL R.
WHITE, PINKEY S. CARR, CORNELL P.
CARTER,

    **Defendants-Appellees.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

                          /

BEFORE:    SUHRHEINRICH and CLAY, Circuit Judges; NIXON, District Judge.[*]

    **CLAY, Circuit Judge.**    Plaintiff, Claudette Walcott, contends in this employment discrimination action that the district court erred in granting Defendants' motion for summary judgment for claims alleging race, sex, and age discrimination in violation of 42 U.S.C. §§ 1981, 1983 and Title VII, 42 U.S.C. § 2000e, *et seq*., the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*., and OHIO REV. CODE ANN. § 4112.14. Plaintiff argues that she satisfied her *prima facie* burden of demonstrating race, age, and sex discrimination, and that she established that

---

[*]The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

Defendants' proffered reasons for not promoting her were pretextual. Finally, Plaintiff maintains that the district court abused its discretion in denying her motion for an extension of the discovery deadline and for reconsideration of the same. For the reasons that follow, we **AFFIRM** the district court.

## BACKGROUND

*Facts*

Plaintiff, Claudette Walcott ("Walcott") is an African-American woman born on November 7, 1955. She was hired as an attorney in the Labor and Employment Section ("Labor Section") of the City of Cleveland Law Department in September 1994. In October 1995, Lessie Milton ("Milton") became Labor Section Chief and Walcott's supervisor. Walcott stated during her deposition that she and Milton had a difficult working relationship, which became more strained in June 1996 when Walcott requested time off because of fatigue and anemia. Walcott testified at her deposition that after her requested leave was granted, she left a memo for Milton detailing the status of her pending cases. Milton, in contrast, maintains that Walcott failed to apprise her of the status of all of her cases, left her files in disarray, and allowed deadlines to be missed and a status conference to go unattended.

After Walcott's return to work in August 1996, she requested and was granted leave to transfer to the Legislation Section of the City Law Department. She received her first performance review on June 10, 1997, which was conducted by Milton and the Legislation Section Chief, Rick Horvath. On a scale of zero to five, with zero reflecting unsatisfactory performance, two indicating a performance that met expectations, and five representing outstanding performance, Walcott

2

received scores between 1.5 and four, with an average of 2.64. Walcott's lowest scores were for "timely completion of tasks" and "assignment management," while her highest were for "advocacy" and "labor counsel." In a memo to Jordan, Walcott objected to what she believed were unfair scores from Milton.

Walcott's review for the subsequent year was conducted by then-Legislation Chief Barbara Langhenry on November 6, 1998. Her scores ranged from two to four, with an average of 2.9. Her lowest scores were all twos, received for "assignment management," "initiative," "leadership," and "timely completion of assignments," while her highest, both fours, were for understanding of municipal law and "responsiveness and accountability for legal advice."

In September 1998, defendant Cornell Carter ("Carter") was named the City's Director of Law. Five months after his appointment, Carter demoted the Labor Section Chief. Walcott testified that, in contrast to normal procedure, this position was not posted interdepartmentally.

In February 1999, Carter hired Michelle Macecevic ("Macecevic") as Labor Section Chief. Macecevic, a white woman who had served as Assistant Director of Law in the General Litigation Department, did not have labor or employment experience at the time of her promotion. Walcott cites Macecevic's lack of experience as evidence of discrimination in the promotion decision; Carter stated in an affidavit that Macecevic was selected for the position because her good working relationship with the police department was valuable to the Labor Section and because of her strong leadership skills and demonstrated initiative.

Approximately three months later, Carter and Milton requested that Walcott transfer back to the Labor and Employment Section. Walcott refused but was involuntarily reassigned in the

3

summer of 1999. In August 1999, Walcott filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"), alleging that she was discriminated against on the basis of her race and age when Macecevic was hired as Labor Section Chief.

In September 1999, Carter reassigned Macecevic to Code Enforcement Section Chief, and named as Labor Section Chief defendant Pinkey Carr ("Carr'), an African-American woman. Several months later, Carter promoted Carr to Chief Counsel; she continued to hold the Labor Section Chief position as well until a replacement was named.

Walcott's third performance review was conducted by Carr on December 3, 1999. Her scores ranged from two to four, with an overall score of three. Her lowest scores, both twos, were for "timeliness in completing assignments" and "accountability for legal advice"; her highest score, a four, was for understanding of labor and employment law.

Also in December 1999, Carr hired Matthew Brady ("Brady"), a white man born on December 31, 1960, to serve as Labor Section Chief. Less than two months later, Walcott filed a second charge with the EEOC and OCRC, alleging retaliation and disability discrimination in connection with the hiring of Brady. Walcott contends that Brady had only limited labor law experience.

Brady was demoted in March 2000 to Assistant Director of Law, and Carr hired Eric Schaltenbrand ("Schaltenbrand"), a white man then serving as Assistant Director of Law in the Labor Section, to replace him as Labor Section Chief. A month later, Walcott filed a third charge

with the EEOC and OCRC, alleging retaliation and gender, race, and disability discrimination related to the promotion of Schaltenbrand.

Schaltenbrand resigned from the City Law Department on May 26, 2000. Defendants conducted a nationwide search for his replacement, and in September 2000 hired Darryl Hines, an African-American man born on June 11, 1949, to fill the position of Labor Section Chief.

On October 30, 2001, Walcott received a Notice of Discipline from Carr, informing her that she was suspended without pay for one day for her failure to meet a deadline for a dispositive motion in one of her cases. In the meantime, Walcott had submitted a memo to Carr requesting a medical leave of absence, which was approved for the period October 17, 2001, through December 17, 2001. While on that leave, Walcott resigned from the City Law Department and accepted a position as Personnel and Human Resources Officer with the Cleveand Municipal Court.

*Procedural History*

On February 11, 2002, Walcott filed a complaint in the United States District Court for the Northern District of Ohio alleging race, age, and sex discrimination under 42 U.S.C. §§ 1981, 1983, 2000e, and 29 U.S.C. § 621 *et seq*., and retaliatory discrimination claims brought pursuant to state law. On June 3, 2002, Walcott filed an amended complaint, adding a claim for defamation under state law. Pursuant to the three sets of charges filed by Walcott, the OCRC had issued probable cause findings on Walcott's behalf on July 13 and December 7, 2000 on all of the claims raised before this Court.

During the pendency of her action in the district court, Walcott agreed to submit to a deposition on August 8, 2002. That deposition did not occur, and a subsequent deposition was

scheduled for October 31, 2002. Three days before that date, Walcott fired her attorneys, purportedly for inadequate representation, and moved for an extension of discovery, or, in the alternative, dismissal of her case without prejudice. The district court denied that motion and required Walcott to appear for a videotaped deposition on November 25, 2002.

On February 3, 2003, Defendants filed a motion for summary judgment on all of Walcott's claims. Walcott filed a response in opposition to that motion on March 19, 2003. On May 24, 2003, the district court granted summary judgment to Defendants on all claims brought by Walcott. Walcott filed a notice of appeal to this Court on June 20, 2003, challenging the district court's grant of summary judgment and denials of Walcott's motion for an extension of discovery and her motion to reconsider the denial of that motion. Walcott has not appealed the district court's ruling on her state law claims for defamation and for negligent and intentional infliction of emotional distress and defamation.

## DISCUSSION

**I. Whether the District Court Properly Grant Defendants' Motion for Summary Judgment.**

**1. Standard of Review**

We review a district court's grant of summary judgment *de novo*. *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004)(citing *Johnson v. Econ. Dev. Corp.*, 241 F.3d 501, 509 (6th Cir. 2001)). Summary judgment is appropriate when there are no genuine issues of material fact. *Id.*; FED. R. CIV. P. 56(c). In reviewing the district court's grant of summary judgment, we view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576-77 (6th Cir. 2004)(citing *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 157 (1970)); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000); *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**2.     Plaintiff's Race Discrimination Claim**

Walcott's first argument relates to her claim that Defendants' failure to promote her constituted race discrimination in violation of Title VII; 42 U.S.C. § 1981; and OHIO REV. CODE ANN. § 4112. As the district court noted, claims of discrimination under each of these provisions are considered under the legal framework established for Title VII race discrimination claims. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 n. 2 (6th Cir. 2000)("the standards for Title VII are equally applicable to Dews' claims under 42 U.S.C. § 1981 and O.R.C. § 4112").

In the absence of direct evidence, a Title VII plaintiff may set forth a *prima facie* case of discrimination for failure to promote by showing (1) that she is a member of a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003)(citing *Dew*, 231 F.3d at 1020-21). The parties do not dispute the district court's finding that Walcott satisfied her *prima facie* burden.

Once a plaintiff has set forth a *prima facie* case of race discrimination, the burden shifts to the defendant to present a "legitimate, non-discriminatory reason" for the failure to promote. *Id.* at

614-15 (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). We agree with the district court that Defendants met this burden by presenting evidence that Walcott was not promoted because: she was unable to get along with supervisors and did not work well with other staff; she left her files in disarray before going on medical leave; her performance reviews were not impressive in the categories of timeliness, assignment management, communication skills, leadership, and initiative; she did not show improvement in these areas over time; she missed important deadlines; and she refused to cooperate with Defendants' request that she transfer back to the Labor and Employment Section.

Once a defendant has met its burden of presenting a legitimate, non-discriminatory reason for an adverse employment action, a plaintiff will survive summary judgment only by raising a genuine issue of material fact as to whether the proffered reason is in fact a pretext for discrimination. *Id.* at 616. A plaintiff establishes pretext by showing that the reason offered by the defendant: (1) has no basis in fact; (2) did not actually motivate the decision not to promote, or (3) was insufficient to warrant the decision not to promote. *Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 258 (6th Cir. 2002)(citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

The district court carefully examined Walcott's evidence under each of the prongs of the pretext analysis just discussed. We agree with the district court that Walcott, having conceded in her deposition that she did miss deadlines, that her working relationship with Milton, in Walcott's words, sometimes got "out of order," and that she refused to transfer into the Labor Section when

8

asked to do so, cannot establish that the reasons given by Defendants for their failure to promote Walcott have no basis in fact.

The district court was also correct in concluding that Walcott failed to show that the proffered reasons did not actually motivate Defendants' decision not to promote Walcott. Walcott argues that her request to transfer out of the Labor Section and her subsequent refusal to voluntarily return to that section could not have been the true reason for the decision not to promote her, because both Macecevic and Carr were promoted without ever having worked in the Labor Section. This argument fails because a lack of experience in a department is distinct from a demonstrated resistance to working in that department. Defendants reasonably distinguished between these two circumstances in making their decisions about whom to promote.

Finally, we agree with the district court that the reasons given by Defendants are sufficient to explain their decision not to promote Walcott. Walcott raises only one argument that the reasons given, even if true, do not justify her non-promotion. She contends that Carter's affidavit testimony that her limited litigation experience was a factor in the decision not to promote her was insufficient to support that decision because litigation was only a small part of the work of the Labor Section and because it was not her fault that she did not have more litigation experience. The latter argument is irrelevant, as Defendants have not cited some blameworthy failure to obtain litigation experience as part of their decision not to promote her; rather, they have simply noted that she lacked litigation experience. As for Walcott's contention that litigation was only a small part of the work of the Labor Section, this argument is unsupported by any evidence. Even if true, Defendants have never suggested that Walcott's lack of litigation experience was the only reason for the decision not to

9

promote her. The unrebutted reasons cited by Defendants for their failure to promote Walcott, including her resistance to work in the Labor Section, her missed deadlines, and her difficulty with her supervisor, easily suffice to support the decision not to promote her.

We conclude that Walcott failed to raise a genuine issue of material fact with respect to her claim that Defendants' proffered non-discriminatory reasons for not promoting her were pretextual, and that the district court correctly granted summary judgment to Defendants on Walcott's race discrimination claim.

**3.  Plaintiff's Sex Discrimination Claim**

Walcott contends that Defendants discriminated against her on the basis of her gender in violation of Title VII and OHIO REV. CODE ANN. § 4112.02. Because the argument she sets forth in support of this position is identical to her argument in support of her race discrimination claim, we reject it for the reasons set forth in the discussion of the race discrimination claim, and find that the district court correctly granted summary judgment to Defendants on her sex discrimination claim.

**4.  Plaintiff's Age Discrimination Claim**

Walcott argues that the district court erred in granting summary judgment to Defendants on her claim that Defendants' failure to promote her constituted age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*. She raises her age discrimination claim before this Court only with respect to the promotion of Brady, who is five years younger than Walcott.

10

In order to establish a *prima facie* case under the ADEA, a plaintiff must show, by a preponderance of the evidence, that: (1) she was at least forty years old at the time of the alleged discriminatory act; (2) she was subject to adverse employment action; (3) she was otherwise qualified for the position; and (4) after she was rejected, a substantially younger person was hired for the job. *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001)(citing *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998)).

The district court determined that with respect to Brady, Walcott made out a *prima facie* case of age discrimination, but went on to grant summary judgment to Defendants on the ground that, as with her race and sex discrimination claims, Walcott could not demonstrate that Defendants' given reasons for her non-promotion were pretextual.

We must disagree with the district court that Walcott established a *prima facie* case of age discrimination. The fourth prong of the *prima facie* analysis under the ADEA requires Walcott to show that Brady is *substantially* younger than she is. We have held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less . . . is not significant." *Grosjean v. First Energy Corp*., 349 F.3d 332, 340 (6th Cir. 2003). Brady is five years younger than Walcott and thus, under our precedent, is not substantially younger than she is. We find that Walcott has not established a *prima facie* case of age discrimination.

**5. Plaintiff's Retaliation Claim**

Before this Court, Walcott contends that Defendants retaliated against her by failing to promote her after she filed charges with the EEOC, and by suspending her without pay for one

11

day in October, 2001, in violation of Title VII and Ohio Revised Code § 4112.02. In order to establish a *prima facie* case of retaliation, a plaintiff must establish that (1) she engaged in activity protected by Title VII; (2) the exercise of her civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

We will first address her charge that the decision not to promote her constituted retaliation. Walcott was first denied a promotion in February 1999, when Macecevic was named Labor Section Chief. Walcott filed her first EEOC charge against Defendants approximately six months later. Four months later, Walcott was again denied a promotion to Labor Section Chief, when Brady was hired. Defendants have contested only Walcott's claim that there is a causal connection between her EEOC filing and the decision not to promote her.

To establish a causal connection between the protected activity and the adverse employment action, a plaintiff must present evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (quoting *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)(citations omitted)). Temporal proximity alone, without additional evidence of a retaliatory animus, will not suffice to support a finding of a causal connection. *Hafford v. Seidner*, 183 F.3d 506, 616 (6th Cir. 1999).

We agree with the district court that Walcott has failed to establish a causal connection between the filing of her EEOC charges and the failure to promote her, because she cannot

12

demonstrate that she was treated differently before and after filing the EEOC charges. *See Walborn v. Erie County Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998). Defendants first failed to promote Walcott six months prior to her first EEOC filing; the fact that they did so again four months after that filing (and a third time, a month after her second EEOC filing) is insufficient to raise an inference of a retaliatory animus.

Walcott also contends that her one-day suspension without pay in October 2001 represented retaliation for her EEOC filings. However, this issue was not raised before the district court. We therefore decline to entertain it here. *See White v. Anchor Motor Freight,* Inc., 899 F.2d 555, 559 (6th Cir. 1990); Harrington *v. Vandalia-Butler Bd. of Ed.*, 585 F.2d 192, 197 (6th Cir. 1978)(citing *Hutton v. United States*, 501 F.2d 1055, 1062(6th Cir. 1974)).

**II.     Whether the District Court Abused its Discretion in Denying Plaintiff's Motion for An Extension of Discovery.**

We review  a district court's denial of a request for an extension of discovery for abuse of discretion. *Thomas v. City of Cleveland*, No. 01-3302, 2002 WL 2020038 (6th Cir. Jan. 30, 2003). We will find an abuse of discretion only when we reach "a definite and firm conviction that the trial court committed a clear error of judgment." *Tompkin v. Phillip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004)(citation omitted).

On October 31, 2002, Walcott's then-counsel filed a motion to withdraw and requested an extension of time so that Walcott could obtain new counsel. The district court denied the request for an extension of time the following day. Walcott, proceeding *pro se*, then filed a motion to reconsider the order denying what she captioned to be an extension of the discovery

cut-off deadline, arguing that she should not be forced to attend a deposition without an attorney. The district court again denied the motion, citing the reasons set forth in Defendants' brief in opposition to the motion for reconsideration, which referenced Defendants' repeated failed attempts to procure Walcott's presence for deposition.

Given that Walcott's deposition had to be repeatedly rescheduled due to her failures to appear for it, we cannot agree with her that it was an abuse of discretion for the district court to deny her requests to extend the deadline for discovery and thus further postpone her deposition.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.