NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0351n.06

No. 24-3576

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jul 17, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| CYNTHIA BARNES, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| SECRETARY OF VETERANS AFFAIRS, | ) | OHIO |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: KETHLEDGE, MURPHY, and MATHIS Circuit Judges.

MURPHY, Circuit Judge. While employed as a nurse at a VA (or Veterans Affairs) hospital, Cynthia Barnes repeatedly worked overtime without permission. To deter this conduct, the hospital imposed harsher and harsher discipline—from a written counseling, to a reprimand, to a suspension. But none of these sanctions stopped Barnes from taking unauthorized overtime. So the hospital eventually fired her. In this suit under the Age Discrimination in Employment Act (ADEA), Barnes alleges that the hospital fired her because of her age and created an age-based hostile work environment. But overwhelming evidence confirms that the hospital terminated Barnes for her consistent refusal to follow her supervisor's orders. And Barnes points to no evidence suggesting that her age had anything to do with the allegedly hostile work environment. We thus affirm the district court's grant of summary judgment to the Secretary of Veterans Affairs.

I

Barnes obtained a nursing degree in 1978. She then spent over three decades in the medical profession. In 2015, she took a job with the VA hospital in Cincinnati, Ohio. Barnes worked as a nurse expeditor in the hospital's transfer center with a primary duty of facilitating the transfer of veterans to the VA hospital from other healthcare facilities. For the first three and a half years at this hospital, Barnes received positive feedback for her performance.

In May 2019, though, the hospital changed its organizational chart so that the transfer center began to report to "Patient Business Service" rather than "Nursing Management." Susan Mickey became Barnes's supervisor. Mickey emphasized the need to "streamline" the transfer center, and her "desire to save money at all costs became forefront" after this reorganization. Barnes Dep., R.16-1, PageID 151, 184.

Barnes disagreed with Mickey's efficiency goals. As Barnes saw things, she could not "streamline when a veteran's life" and "health" were on the line. *Id.*, PageID 151. To make matters worse, the transfer center was short staffed at this time because its two nurses (Barnes and Robert Good) lacked their usual assistant. Barnes thus faced a dilemma because she felt she had "an obligation to the veterans" to give them the best possible service, but she could not provide that quality service within her regular hours (7:30 a.m. to 4:00 p.m.). *Id.*, PageID 153.

The result? Soon after the May transition, Barnes repeatedly worked (paid) overtime and asked Mickey to authorize the extra hours after the fact. Mickey approved her initial requests but instructed Barnes that she could not work more overtime without preapproval. Despite these instructions, Barnes continued to work overtime in June without obtaining permission. In mid-June, Mickey issued Barnes a "Written Counseling" for this conduct. Mem., R.16-2, PageID 292.

That counseling did not deter Barnes. During July and August, she worked unapproved overtime on many additional days. By mid-August, Mickey chose to increase the discipline to a proposed reprimand. Barnes still seemed to downplay the issue, arguing in response to Mickey's proposal that overtime "is sometimes a necessity" because the nurses in the transfer center lacked an assistant. Resp., R.16-2, PageID 317. The hospital disagreed and upheld the reprimand. Letter, R.16-2, Page ID 324.

Even after this reprimand, Barnes worked overtime without obtaining approval several times in October. Mickey thus proposed to suspend Barnes. The hospital later upheld that harsher sanction too.

Yet even this suspension did not dissuade Barnes from taking unauthorized overtime several times that December. This renewed disobedience was the last straw. In January 2020, the Patient Business Service's department head recommended that the hospital terminate Barnes. The hospital upheld his decision and fired Barnes later that month. At that time, Barnes was 64 years old and just months away from her eligibility to retire.

Barnes sued the Secretary of Veterans Affairs under the ADEA. As relevant now, she alleged that the hospital violated the ADEA both by terminating her because of her age and by creating a hostile work environment based on her age. The district court granted summary judgment to the Secretary on both claims. We review its summary-judgment decision de novo. *See Smith v. Newport Utils.*, 129 F.4th 944, 948 (6th Cir. 2025).

II

Since 1974, the ADEA has applied not just to private employers but also to most federal agencies. *See Lehman v. Nakshian*, 453 U.S. 156, 157–58 (1981). A standalone section applicable to federal agencies provides that "[a]ll personnel actions affecting employees or applicants for

3

employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The parties assume that this section follows the same rules as a nearby section that governs claims against private employers. *See id.* § 623(a). We are not so sure. The Supreme Court has, for example, read the ADEA section governing federal employers to adopt a more lenient causation test than the one that applies to private employers. *See Babb v. Wilkie*, 589 U.S. 399, 410 (2020) (distinguishing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). At day's end, though, we fail to see why any potential (unbriefed) differences matter here. Like the parties, then, we will follow the same summary-judgment framework that we have applied to ADEA claims against private employers. *Cf. Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 340–41 (6th Cir. 1998). Applying that framework, Barnes argues that a reasonable factfinder could find that the VA hospital violated the ADEA in two ways: by firing her because of her age and by creating an age-based hostile work environment. Neither theory has merit.

*Termination.* When deciding whether a reasonable factfinder could find that an employee's age motivated an employer's termination decision under the ADEA, we have long followed the general burden-shifting approach from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Barnett*, 153 F.3d at 341. Under that approach, employees must first "make out a prima facie case" that their employer engaged in age discrimination. *Id.* The burden then shifts to employers to identify a "legitimate nondiscriminatory reason" for the termination. *Id.* Employees lastly must produce enough evidence from which a reasonable factfinder could conclude that the claimed reason for the termination was "pretextual" and that their age really motivated the decision. *Id.*; *see Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012).

Here, we may assume that Barnes made out a prima facie case because her claim fails at the latter two steps. To start, the Secretary identified a legitimate, nondiscriminatory reason for

4

Barnes's discharge. The VA hospital ostensibly fired Barnes because she repeatedly took unapproved overtime despite her manager's consistent instructions that she could not work extra hours without preapproval. We have long recognized that this type of "insubordination" suffices as a neutral reason for an employment action. *See Pelcha v. MW Bancorp., Inc.*, 988 F.3d 318, 326 (6th Cir. 2021); *Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013).

Next, Barnes failed to meet her burden to show that this reason was pretextual and so not the true reason for the decision to fire her. Although an employee may satisfy this final burden in any number of ways, we have repeatedly highlighted three common methods. *See Blizzard*, 698 F.3d at 285. Barnes might show that the hospital's claimed reason for firing her "had no basis in fact" because she did not disobey her supervisor's instructions. *Pelcha*, 988 F.3d at 326. She might show that the supervisors who decided to fire her did not subjectively do so based on this insubordination justification. *See Fullen*, 514 F. App'x at 606. Or she might show that this justification was not weighty enough to warrant termination. *See id.*; *see also Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1390 (6th Cir. 1993) (per curiam).

Barnes spent little time attempting to prove pretext in any of these usual ways. She, for example, does not claim that the VA hospital concocted its insubordination claim. *Pelcha*, 988 F.3d at 326. To the contrary, she admits that she worked unauthorized overtime some "20 times" between June and December 2019. Appellant's Br. 8–9. And she admits that Mickey consistently warned her that she could not take overtime without permission. Nor does Barnes point to evidence suggesting that some other factor "actually motivate[d]" her termination. *Fullen*, 514 F. App'x at 606 (citation omitted). Barnes, for example, conceded that Mickey never did anything "specifically" that would suggest that her actions were motivated by Barnes's age. Barnes Dep., R.16-1, PageID 246. Lastly, Barnes does claim that her unauthorized overtime was "insufficient"

to justify her termination because 20 or so other employees also worked overtime. *Fullen*, 514 F. App'x at 606 (citation omitted). Yet she relies only on her own conclusory allegations as support for this claim. She thus lacks evidence that these other employees were similarly situated to her. *See Pelcha*, 988 F.3d at 328–29. Indeed, the most analogous employee—the other transfer-center nurse—generally could complete all his "daily tasks" within his assigned hours without the need to work overtime. Good Decl., R.17-2, PageID 471.

So how does Barnes attempt to show unlawful age discrimination? She suggests that the hospital should not have punished her for violating Mickey's orders because she had *a good reason* for her insubordination: she "was doing what was needed for the veterans." Barnes Dep., R.16-1, PageID 204. Yet her reasons for disobeying her supervisor do not show that the hospital harbored hidden age-based animus against her. And even if she were correct that Mickey overemphasized cost concerns at the expense of veteran care, the ADEA does not permit us to second-guess the "wisdom" of an employer's business judgment under the guise of policing illegal age discrimination. *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 510 (6th Cir. 2008); *see Stein v. Nat'l City Bank*, 942 F.2d 1062, 1065 (6th Cir. 1991). Because Barnes lacks any evidence to suggest that her age motivated her termination, her ADEA challenge to her termination falls short.

*Hostile Work Environment*. We have held that private employees may raise hostile-work-environment claims under the ADEA. *See Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996). And we may assume that the same standards apply to federal employees. *Cf. Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1205–09 (11th Cir. 2021). Under those standards, Barnes needed to show (among other things) that the hospital subjected her to sufficiently serious "harassment, either through words or actions, *based on age*[.]" *Crawford*, 96 F.3d at 834–35 (emphasis added). But Barnes failed to satisfy this element. She suggested that Mickey harassed

her by "[c]onstantly getting on [her] to get the work done on time without the staffing to do it." Barnes Dep., R.16-1, PageID 178–79.  Even if we assume that Mickey's alleged badgering could qualify as actionable harassment under the ADEA, Barnes fails to connect that purported harassment to her age.  In fact, Barnes admitted that Mickey never *said* anything that would suggest the alleged badgering had anything to do with Barnes's age (rather than Mickey's desire to avoid overtime costs).  *Id.*, PageID 246.  And Barnes admitted that Mickey never *did* anything that would connect her overtime concerns with Barnes's age.  *Id.*  So no reasonable factfinder could conclude that Barnes experienced age-based harassment.

We affirm.